**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Shaul Stern, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 00-2602-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Susan Weinstein, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 00-2601-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Jenny Rubin, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 01-1655-RMU |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| Seth Charles Ben Haim, *et al.*, | ) |
| | ) |
| Plaintiffs, | )  CIVIL ACTION NO. 02-1811-RCL |
| | ) |
| v. | )  CIVIL ACTION NO. 08-520-RCL |
| | ) |
| The Islamic Republic of Iran, *et al.*, | ) |
| | ) |
| Defendants. | ) |



Ruth Calderon-Cardona, *et al.*,

        Plaintiffs,

        v.

Democratic People's Republic of Korea, *et al.*,

        Defendants.

MISC. NO. 14-648

Mary Nell Wyatt, *et al.*,

        Plaintiffs,

        v.

Syrian Arab Republic, *et al.*,

        Defendants.

CIVIL ACTION NO. 08-502-RCL

## REPLY TO ICANN'S OPPOSITION TO PLAINTIFFS' MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO MOTION TO QUASH <u>WRITS OF ATTACHMENT</u>

Plaintiffs-Judgment Creditors respectfully file this Reply to ICANN's[1] Opposition to Plaintiffs' Motion for Enlargement of Time to Respond to Motions to Quash Writs of Attachment[2] and in further support of the Motion, respectfully state as follows:

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in plaintiffs' Motion for an Enlargement of Time to Respond to Writs of Attachment.

[2] ICANN's Opposition is docketed as follows: *Rubin, et al. v. Islamic Republic of Iran, et al.* (Case No. 01-1655 (RMU)), DE 115; *Weinstein, et al v. Islamic Republic of Iran, et al*. (Case No. 00-2601 (RCL)), DE 99; *Stern, et al. v. Islamic Republic of Iran, et al.* (Case No. 00-2602 (RCL)), DE 38; *Ben Haim, et al. v. Islamic Republic of Iran, et al.* (Case Nos. 02-1811; 08-520 (RCL)), DE 56 and 53, respectively, *Wyatt, et al, v. Syrian Arab Republic, et al.* (Case No. 08-502 (RCL)), DE 80; and *Calderon-Cardona, et al. v. Democratic People's Republic of Korea, et al.* (Misc. No. 14-648), DE 17.

Plaintiffs are victims of terrorism and their families who have obtained judgments amounting to millions of dollars in the aggregate against the governments of Iran, Syria and North Korea, respectively, for the roles played by those governments in the terrorist attacks in which plaintiffs were harmed. Some of these judgments have been pending for more than ten years. Although the plaintiffs have diligently searched for assets in the United States against which to enforce their judgments, these judgments remain largely unsatisfied.

As part of their ongoing judgment enforcement efforts, on or about June 24, 2014, plaintiffs served ICANN, as a third party garnishee holding assets of the respective judgment debtors, with writs of attachment issued by the Clerk of Court for the District of Columbia District Court, attaching the judgment debtors' valuable internet assets held by ICANN. These assets include the top level domains and internet protocol addresses of the judgment debtors. The writs of attachment consist of a one page court form accompanied by two short statutory interrogatories. *See* Exhibit A hereto, Declaration of Robert Tolchin ("Tolchin Decl.") at ¶2. Also on or about June 24, 2014, plaintiffs served ICANN with a Rule 45 document production subpoena containing a request for seven limited categories of documents. *Id.*

When ICANN requested a three week extension of its time to respond to the writs of attachment and the subpoenas, plaintiffs consented without delay subject to an accommodation they requested to protect their rights. *See* Tolchin Decl. at ¶¶ 3-4. As part of the parties' agreement, ICANN was to provide substantive responses to the subpoenas before plaintiffs would be required to file pleadings addressing the merits of the case. Instead, in violation of the spirit and intent of that agreement, ICANN served plaintiffs with objections to the subpoenas without producing documents and immediately followed this by its highly substantive Motion to Quash which requires plaintiffs to file a merits pleading.

Thus, ICANN is attempting to steamroll this process to a speedy conclusion on its own terms without allowing plaintiffs sufficient time to gather the information necessary to adequately oppose the merits of ICANN's motion.

In stark contrast to plaintiffs' willingness to accommodate ICANN's request for a three week extension of time to respond to two short interrogatories and seven limited document production requests, ICANN has taken a hard line approach to plaintiffs' reasonable request for a six week extension to respond to ICANN's highly substantive and potentially dispositive Motion to Quash. In a tit-for-tat reminiscent of the elementary school playground, counsel for ICANN took the position that because it requested and received a three week extension to respond to two short and non-substantive pleadings, it would only provide plaintiffs with a three week extension to respond to the potentially dispositive Motion to Quash, making plaintiffs' response due in early September immediately after counsel's return from a previously scheduled overseas vacation. *See* Tolchin Decl. at ¶ 8.

However, as explained in the Motion, ICANN's position did not take into consideration the novelty and complexity of the issues (which are issues of first impression), plaintiffs' need to research and test ICANN's unilateral presentation of the facts, or plaintiffs' counsels' vacation schedules. Even an extension to the middle of September, to which ICANN appears willing to agree, does not provide plaintiffs with sufficient time to prepare their response. When counsel for ICANN suggested to plaintiffs' counsel that he might be willing to agree to a date in the middle of September, plaintiffs' counsel explained that she could not agree to a date that would leave counsel with insufficient time to determine how to proceed in this matter. *See* Tolchin Decl. at ¶ 9. For this reason, plaintiffs have filed a motion seeking a reasonable enlargement of time to September 30, 2014. Plaintiffs' satisfied their meet and confer obligations under the local rules

and filed their Motion only after it was clear that no agreement as to dates could be reached. *See* Tolchin Decl. at ¶ 10.[3]

This is also not a case of lack of preparedness, as ICANN suggests citing to *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 539 (7th Cir. 2011). The facts in *Yancick* have no bearing on plaintiffs' conduct here. In *Yancick*, after already having received two extensions of time to oppose a summary judgment motion, plaintiff's counsel sought an emergency one day extension just minutes before the second deadline expired and then continued to file supporting materials to its opposition for another week. By contrast, the instant plaintiffs have never before sought an extension of their Motion to Quash response deadline and they filed their enlargement motion well in advance of the deadline. In addition, plaintiffs could not have known the specific direction this litigation would take and the factual arguments ICANN would make in opposing the writs of attachment until ICANN presented those arguments in its Motion to Quash. Indeed, ICANN could just as easily have consented to the writs and turned over the assets in question to the plaintiffs. Considering that ICANN has filed over 240 pages of exhibits and two supporting affidavits, it is not surprising that plaintiffs require additional time to research and analyze ICANN's factual presentation with the assistance of one or more experts.

Moreover, notwithstanding ICANN's claims to the contrary, the additional time plaintiffs are seeking causes no prejudice to ICANN and will ensure that the matter is resolved on the

---

[3] Even if the Court finds plaintiffs' meet and confer efforts technically insufficient under Local Rule 7(m), this should not be grounds for denying the motion, particularly where it is clear that the parties would not have been able to resolve their disputes. *See, e.g., Greene v. Shegan*, 917 F. Supp. 2d 146, 149 at n. 3 (D.D.C. 2013) (motion not denied for failure to comply with Local Rule 7(m) where party filing the motion stated that he had conferred with opposing party concerning the issues and determined his position would be opposed even though he did not inform opposing party of intent to file motion.); *Purcell v. MWI Corp.*, 824 F. Supp.2d 12, 19 at n. 3 (D.D.C. 2011) ("Although violations of this rule [7(m)] may in some circumstances be grounds for denying a motion, the court has the discretion to excuse such failures... This is particularly true where, as here, the parties would have proceeded with the exact same disputes regardless of efforts to comply with the rule.") (citations omitted).

merits and not on technicalities and posturing. While ICANN may have a desire to see this matter resolved quickly, its pendency has no impact on the day to day operation of ICANN's operation or the operation of the domain names at issue. All those domain names remain as functional and operational today as they were the day before the Writs of Attachment were served. Indeed, ICANN's own assertions that it holds no assets of the ccTLDs, has no ongoing relationship with the people who run the ccTLDs, and does no business with the ccTLDs belies any claim that it could possibly be prejudiced by plaintiffs' writs of attachment.

Like ICANN, plaintiffs desire that this matter be resolved as quickly as possible, but not at the expense of having a fully developed factual and legal record for the court's consideration. After extensive research and consultation with various internet experts, plaintiffs have now reached the conclusion that additional discovery from ICANN and other third parties is needed to enable plaintiffs to fully develop and present the facts to the court. This is not an ordinary judgment enforcement procedure. ICANN's surprising approach has cast scrutiny on the entirety of its operations—most of which remain secretive. Additionally, plaintiffs are in the process of retaining additional co-counsel specializing in internet law. Plaintiffs' new additional attorneys should be given proper time to come up to speed on this matter in order to prepare a focused discovery plan squarely aimed at ICANN's factual representations.

ICANN's motion raises a number of complex and novel issues of first impression that require scrutiny. *First*, ICANN has taken the position that domain name registries are not property. While this is a demonstrably frivolous legal position based upon controlling case precedent, in addition to the Lanham Act, it is just as frivolous in practice. Plaintiffs are aware, and expect that discovery will document, that private parties have previously purchased, owned and operated country code top level domains. These ccTLD owners have voiced outrage at

ICANN's position and are likely to file amicus briefs in support of Plaintiffs position. At the very least, plaintiffs should be allowed to depose these ccTLD owners to prove that ccTLD's are freely transferrable property with independent quantifiable economic value.

Further along these lines, aside from country registries, ICANN has just finished a multi-billion dollar effort to sell thousands of new generic registries to third party corporate titans. Everyone from Starbucks to Google has lined up and paid over $250,000 per registry just for the hope of being awarded a registry by ICANN. This begs the question if domain registries are not property then what are all these companies paying such large sums of money for? These third parties should be heard from as well, either through amicus filings or depositions. An adjournment of this motion and an appropriate discovery period would accomplish this goal.

*Second*, in its moving papers ICANN took many unchallenged, unverified factual positions regarding ICANN's operations and capabilities. Plaintiffs should be given the opportunity to conduct depositions of the persons most knowledgeable at ICANN. In order to do this effectively, Plaintiffs will need to obtain and review relevant documents from ICANN. For example, ICANN takes the position that even if a ccTLD is property there is nothing that ICANN can do to transfer it to the judgment creditors. This is just flat out wrong and plaintiffs should be given a chance to test ICANN under oath. In fact, many registries have been transferred throughout time, either voluntarily or through various proceedings.

*Third*, ICANN's motion is conspicuously silent as to the flow of money as it relates to registries, particularly the registries at issue here. In order to register a .ir domain, for example, it costs over $100 through an Australian registrar. Where does this money go and what portion goes to ICANN? The flow of money generated from registry assets is international in nature and needs to be explored. To this end, it is possible, if not likely based upon preliminary

investigation, that ICANN and various western registrars are, in fact, engaging in commercial relations with Syria, Iran and North Korea, possibly in violation of international sanctions. Plaintiffs need time and the power of subpoenas to put ICANN's activities under a microscope in order to ultimately locate property for the benefit of terror victims.

Plaintiffs are in the process of preparing a separate motion laying out the scope of discovery believed to be needed and asking the court to set a suitable schedule for that discovery. Plaintiffs expect to file that motion within the next week or so and to begin serving deposition and document subpoenas seeking additional factual information relevant to ICANN's Motion to Quash. Obviously, the necessary discovery will require a period of months, not days or weeks.

Accordingly, for the reasons set forth herein and in the Motion, Plaintiffs respectfully request that the Court grant the Motion.

Dated: August 28, 2014

Respectfully submitted,                    _/s/ Robert J. Tolchin_____

                                           Robert J. Tolchin
                                           Berkman Law Office, LLC
                                           111 Livingston Street, Suite 1928
                                           Brooklyn, NY 11201
                                           Telephone: (718) 855-3627
                                           rjt.berkman@gmail.com
                                           *Counsel for PLAINTIFFS*

## CERTIFICATE OF SERVICE

I certify that on August 28, 2014, I filed the foregoing Reply to ICANN's Opposition to Plaintiffs' Motion for Enlargement of Time to Respond to Motions to Quash Writs of Attachment with the Clerk of the Court for the U.S. District Court for the District of Columbia using its CM/ECF System. I certify that the foregoing Reply was served via CM/ECF pursuant to LCvR 5.4(d) on the following counsel for ICANN:

Tara Lynn R. Zurawski (DC Bar No. 980960)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113

Eric P. Enson (pro hac vice)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Jeffrey A. LeVee (pro hac vice)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071

Dated: August 28, 2014

/s/ Robert Tolchin
_____

Robert J. Tolchin
Berkman Law Office, LLC
111 Livingston Street, Suite 1928
Brooklyn, NY 11201
Telephone: (718) 855-3627
rjt.berkman@gmail.com